IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BOMAN & KEMP REBAR, INC., a Utah corporation; BOMAN & KEMP MANUFACTURING, INC.; and TRANSPORTATION INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>J.D. STEEL COMPANY, INC., an Arizona corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S RULE 26 EXPERT DISCLOSURE**<br><br>Case No: 2:05-CV-00199  TC<br><br>District Court Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Plaintiffs' Motion to Strike Defendant's Rule 26 Expert Disclosure[1] is before this Court. The Court has reviewed the motion, memoranda and relevant legal authorities. For the reasons set forth below, Plaintiffs' Motion is DENIED.

## BACKGROUND

Construction of the Olympic speed skating oval

Layton Construction Company (Layton) was awarded the contract to construct the Oquirrh Park Speed Skating Oval in Kearns, Utah for the 2002 Winter Olympics.[2] Layton entered into a subcontract with Commercial Refrigeration, Inc. (Commercial) to make and install the refrigeration system for the oval. In September 1999, Layton entered into a subcontract with Plaintiff Boman & Kemp (Boman) to provide and install

---

[1] Plaintiffs' Motion to Strike Defendant's Rule 26 Expert Disclosure (Motion to Strike), docket no. 60, filed November 28, 2007.
[2] Memorandum of Points and Authorities in Support of Defendant J.D. Steel's Motion for Summary Judgment (Summary Judgment Memo), 2, docket no. 37, filed March 27, 2007.

1

reinforcing bars to the design of the oval both over and under Commercial's refrigeration piping.[3]  Each subcontract included an arbitration clause.[4]

In September 1999, Boman hired Defendant J.D. Steel (J.D. Steel) to provide the labor necessary to install the rebar for the project.[5]  No written contract was signed. Boman supplied the rebar that J.D. Steel installed over and under Commercial's refrigerated piping,[6] and Layton poured the concrete for the concrete slab over the pipe and rebar structure to form the ice skating oval.[7]

After the concrete was poured, the project consulting engineer observed problems with the concrete slab, including areas where no concrete covered the rebar, areas where rebar ties were exposed, areas where the rebar covered by concrete was too close to the concrete surface, and areas where individual aggregate was exposed.[8]  Layton sent a letter to its subcontractors stating that the slab did not meet contract specifications,[9] and the Boman and J.D. Steel demolished and rebuilt the slab.[10]

The arbitration proceeding – Boman's use of Hoffman

Commercial filed suit against Layton to recover damages associated with the failed slab, and Layton invoked the arbitration clause.[11]  Layton, Commercial, and Boman conducted discovery.[12]  Boman hired Michael Hoffman (Hoffman), an expert on

---

[3] *Id*. at 2, 4.
[4] *Id*. at 3.
[5] *Id*. at 2.  Defendant notes that there was no written agreement between Boman and J.D. Steel.  *Id*.
[6] *Id*.
[7] *Id*.
[8] *Id*.; ¶ 10 at 6.
[9] *Id*. at 2–3; ¶ 11 at 6.
[10] *Id*. at 3; ¶ 12 at 6.
[11] *Id*.; ¶ 13 at 6–7.
[12] *Id*.

rebar installation.[13] Boman spent thousands of dollars for Hoffman's work[14] and had numerous contacts and communications with Hoffman, some of which were joint with J.D. Steel personnel.[15] Hoffman rendered his expert opinion (Report) that Boman's and J.D. Steel's rebar work "complied with industry standards and met contract specifications,"[16] and that J.D. Steel's work was not a causative factor in the problems in the construction of the oval.[17] Despite Hoffman's report, the arbitrator ultimately concluded that Commercial and Boman breached their contracts with Layton and owed Layton damages for the failed slab.[18]

Boman's suit against J.D. Steel – J.D. Steel's designation of Hoffman and Ough

Boman alleges that toward the start of the arbitration, Boman's counsel informed J.D. Steel's counsel that if Boman failed at the arbitration, it would look to J.D. Steel for reimbursement.[19] When the arbitration resolved against Boman, Boman initiated this action against J.D. Steel, alleging that "J.D. Steel breached its contract with Boman & Kemp, thereby causing [Boman] to be responsible to Layton for damages associated with the work done by J.D. Steel on the speed skating oval."[20]

In this action, J.D. Steel designated Hoffman as an expert witness to support its claim that its work done on the rebar complied with industry standards and met contract specifications.[21] Before this designation, counsel for Boman and for J.D. Steel deposed

---

[13] Defendant J.D. Steel Company, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Strike Defendant's Rule 26 Expert Disclosure (Memo in Opposition), 2, docket no. 64, filed December 20, 2007.
[14] Memorandum in Support of Plaintiffs' Motion to Strike Defendant's Rule 26 Expert Disclosure (Memo to Strike), 2, docket no. 61, filed November 28, 2007.
[15] Memo in Opposition, 4.
[16] *Id*. at 5.
[17] *Id*. at 8.
[18] Summary Judgment Memo, 3.
[19] Memo to Strike, 4.
[20] Second Amended Complaint, ¶ 11, at 3, docket no. 24.
[21] Memo in Opposition, 5; Summary Judgment Memo, ¶ 17, at 7.

3

Hoffman in May 2006.[22]  After the deposition, Boman filed its Rule 26 Expert Witness Disclosure and did not designate Hoffman, so J.D. Steel designated Hoffman as its expert.[23]  Because Hoffman's deposition testimony was favorable, J.D. Steel did not believe it necessary to retain another expert witness.[24]  Boman, however, opposed J.D. Steel's designation of Hoffman, arguing that Hoffman was Boman's expert witness who had not been designated to testify in this action.[25]

Upon learning of Boman's objection to J.D. Steel's expert designation, J.D. Steel retained a back-up expert.[26]  Boman's Rule 26 Expert Witness Disclosure was filed October 5, 2007, and J.D. Steel's expert witness disclosure was due November 5, 2007.[27]  J.D. Steel alleges that it worked diligently to find another expert before locating David Ough (Ough), and that by the time they had found him, there was insufficient time for Ough to complete his expert report by the November 5 deadline.[28]  J.D. Steel, therefore, designated both Hoffman and Ough and filed Hoffman's report, stating that Ough's report would be forthcoming.[29]  Boman argued that it has been prejudiced by the late submission of Ough's report because the deadline for filing rebuttal reports has passed,

---

[22] Memo in Opposition, 6.
[23] *Id*. at 8.
[24] *Id*.
[25] Memo to Strike, 2.  J.D. Steel alleges that this was the first point at which Boman raised an objection to J.D. Steel's use of Hoffman's Report and deposition testimony.  Memo to Strike, 2.  Boman only notes that "J.D. Steel was notified prior to designating Mr. Hoffman as an expert witness that Boman & Kemp would object to such designation." Memo to Strike, 9.  But the affidavit Boman cites for this argument actually says that this communication occurred *after* J.D. Steel had designated Hoffman as its expert.  *See* Rasmussen Affidavit, ¶ 9, attached as Exhibit A to Plaintiff's Reply Memorandum in Support Plaintiffs' Memo to Strike Defendant's Rule 26 Expert Disclosure, docket no. 68, filed January 16, 2008 (Reply Memo) ("Following Boman & Kemp's expert witness designation, I received a call from Mr. Plant [counsel for J.D. Steel].  Mr. Plant informed me that he had spoken with Mr. Hoffman and that Mr. Hoffman had told Mr. Plant that I [counsel for Boman] had informed Mr. Hoffman that any communication with J.D. Steel's counsel would be inappropriate.  I confirmed that Boman & Kemp took the position that Mr. Hoffman could not be designated as a witness by J.D. Steel.").
[26] Memo in Opposition, 8.
[27] *Id*.
[28] *Id.*
[29] *Id.*  Ough's report is apparently finished now and was filed with Defendant's Memo in Opposition.

4

but J.D. Steel informed Boman that it will agree and stipulate to an extension of time for Boman to file a rebuttal report.[30]

Boman's arguments against J.D. Steel's designations of Hoffman and Ough are not persuasive.  Boman's motion to strike these experts is denied.

## ANALYSIS

### J.D. Steel's designation of Michael Hoffman

"Federal courts have the inherent power to disqualify experts."[31]  Boman argues that this Court should disqualify Hoffman (1) because Hoffman "switched sides;" and (2) because Boman had a confidential relationship with Hoffman wherein confidential or privileged information was disclosed.  Because this Court finds that Hoffman did not switch sides, and that Boman could not have reasonably expected to have a confidential relationship with Hoffman, J.D. Steel's designation of Hoffman is permissible.

Boman's "Switched Sides" Argument

"Generally, a conflict of interest arises when an expert witness is retained by one party and then 'switches side[s].'  In such circumstances, courts have unanimously held that such an expert would be disqualified."[32]  Here, Boman attempts to argue that Hoffman should be automatically disqualified because he "switched sides," in that he was retained by and worked for Boman in the Arbitration Proceeding but now his work will be used by J.D. Steel against Boman.[33]  However, J.D. Steel correctly notes that it is not Hoffman that has switched sides, but Boman, in that Boman initially sought

---

[30] *Id.*
[31] *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996).
[32] *U.S. v. NHC Health Care Corp.*, 150 F.Supp.2d 1013, 1015 (W.D.Mo. 2001).
[33] Memo to Strike, 5.

5

Hoffman's opinion *supporting* the argument that J.D. Steel's rebar work was done properly and now seeks to argue that J.D. Steel's work was done improperly.[34]

In *Koch Refining Co. v. Jennifer L. Boudreau M/V*, the court noted but found inapplicable the doctrine that an expert in a case cannot switch sides in that same case.

> [N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention … [Such] is a clear case for disqualification.[35]

However, in remarkable similarity to this case, the *Koch* court explicitly "point[ed] out that this is not a case in which the expert switched sides," but that it was the litigant that had switched positions.[36] A barge insurance company had retained an expert in its insurance coverage dispute with the owners of a damaged ship, and after the dispute was settled, the insurance company changed its position and joined the ship owners in a suit against the tug operators responsible for the damage.[37]

Like the insurance company in *Koch*, Boman switched sides when its initial position became disadvantageous to its interests. Because the expert, Hoffman, has never "switched sides," this is not a clear case for disqualification of the expert. Hoffman's opinion has never changed and has ever been supportive of J.D. Steel's work. It is no great surprise that "at no time did Boman & Kemp ever intend for J.D. Steel to be able to use Mr. Hoffman as a witness against Boman & Kemp,"[38] or that Boman's counsel informed Hoffman "that Boman & Kemp would not designate him as a

---

[34] Memo in Opposition, 3. J.D. Steel notes that Boman had an "identity of interest" with J.D. Steel in the arbitration proceeding. Memo in Opposition, 3.
[35] *Koch*, 85 F.3d at 1181.
[36] *Id*.
[37] *Id*.
[38] Memo to Strike, 4.

6

testifying expert but would perhaps use him as a consulting expert."[39] These intentions were the natural responses of a party in Boman's switched position, but they have no legal effect in this dispute. The "switched sides" case law does not apply because Hoffman has not switched sides.

The *Koch* Test

Upon noting that the expert in question had not switched sides, the *Koch* court explained that "in disqualification cases other than those in which the expert clearly switched sides,"[40] a two-part test has been adopted to determine whether to disqualify an expert that has consulted with one party and then is subsequently retained by an adverse party:

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?
> Second, was any confidential or privileged information disclosed by the first party to the expert?
>
> Only if the answers to both questions are affirmative should the witness be disqualified.[41]

This Court finds that 1) it was not objectively reasonable for Boman to conclude that a confidential relationship with Hoffman existed; and 2) confidential or privileged information was likely not disclosed to Hoffman.

*Boman had no confidential relationship with Hoffman*

Boman first argues that during the extensive contact and numerous communications between Boman and Hoffman, "information, mental impressions and

---

[39] *Id.* at 5.
[40] *Koch*, 85 F.3d at 1181.
[41] *Id*. (internal citations omitted).

7

strategies regarding the case were discussed."[42] Boman cites *Marvin Lumber Co. v. Norton*, noting that some lower courts have found that a confidential relationship exists when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like."[43] The contested expert in *Marvin* was virtually a company insider.

> [The expert] has engaged in product development work for plaintiff, has performed in-house tests, more rigorous than the industry standards, and has had long-term access to sensitive product design information and plaintiff's manufacturing and research facilities. In addition, [Plaintiff] points out that [the expert] has performed tests to determine water infiltration problems, which is a matter at the heart of this litigation.[44]

In this case, Boman does not allege any such relationship with Hoffman.

Boman makes much of the "over 60 communications between Mr. Hoffman and Boman & Kemp's counsel."[45] However, Boman fails to mention that at least some of those communications included J.D. Steel personnel as well.[46] The presence of J.D. Steel personnel at even one such communication compromises Boman's claim that it was "objectively reasonable" for Boman to conclude that a confidential relationship existed. The assistance of J.D. Steel personnel with Hoffman's Report suggests that Boman did not intend to leave J.D. Steel in the dark, much less divulge confidential information to Hoffman in the unexplainable hope that it would not somehow make its way to the ears of J.D. Steel. There is no record of restraint by Boman on the Hoffman – J.D. Steel communications. Boman's Reply downplays J.D. Steel's actual

---

[42] Memo to Strike, 4.
[43] *Marvin Lumber Co. v. Norton*, 113 F.R.D. 588, 591 (D.Minn. 1986).
[44] *Id.* at 591.
[45] Memo to Strike, 7.
[46] Memo in Opposition, 4, 5.

8

involvement with Hoffman's Report,[47] but even *one* consented interaction involving J.D. Steel personnel would indicate that Boman's intent was *not* to have Hoffman all to itself in a confidential relationship.[48]

*No confidential or privileged information disclosed*

Boman cites cases to define "confidential or privileged information" to include "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses."[49] Boman also noted that in *Marvin*, the court found that it was not necessary to show actual breaches in confidential information, but only "[t]he threat or potential threat that confidences may be disclosed is enough."[50]  This, however, would depend on the reality of prior confidential communications that would be at risk of disclosure.  Boman's purported examples of "[t]hese types of issues [which] were discussed between Boman & Kemp's counsel and Mr. Hoffman"[51] come entirely from an affidavit of Boman's attorney listing his billing time entries for this matter, none of which suggest anything

---

[47] Reply Memo, at 2-3.

[48] Interestingly, J.D. Steel notes that Boman has designated Dean L. Webb as its expert.  Webb was retained by Commercial Refrigeration in the Arbitration Proceeding. Memo in Opposition, 6–7.  J.D. Steel suggests that this action defeases Boman's argument that J.D. Steel's use of Hoffman may prejudice the jury against Boman, and quips that "Boman & Kemp can, of course, attempt to remedy this by explaining to the jury why they adopted a position adverse to J.D. Steel in this proceeding.  In so doing, they will ameliorate any confusion the jury may have as to why Boman & Kemp elected not to designate Hoffman in this case, but J.D. Steel did." *Id*. at 7. Though this is not really an asserted legal argument, Boman's Reply staunchly defends its designation by noting that Commercial Refrigeration is not a party to this proceeding. Reply Memo, at 7.

[49] *Mayer v. Dell*, 139 F.R.D. 1, 4 (D.D.C. 1991) (quoted in *Koch*, 85 F.3d at 1182).  *See also U.S. v. NHC Health Care Corp.*, 150 F.Supp.2d at 1016 (suggesting that an expert's switching of sides may cause the jury to draw prejudicial inferences); *Conforti & Eisele, Inc. v. Div. of Bldg. and Constr.*, 405 A.2d 487, 491 (N.J. 1979) ("Just as a former employee should be prevented from disclosing that which took time and expertise to develop, so too should a litigant be prevented from reaping similar benefits within the context of a lawsuit."); *Conforti*, 405 A.2d at 492 ("The law will imply a relationship of confidence when it is just to do so" . . . when an expert was "privy to confidential documents regarding the legal aspects…as well as the mental impressions, opinions and legal theories of the [defendant's] counsel.").

[50] Memo to Strike, 7.  *Marvin*, 113 F.R.D. at 590.

[51] Memo to Strike, 7.

more than that Hoffman and Boman's attorney communicated via telephone, email, or other means.[52]

Naturally, the actual contents of their communications would not be found there, but these examples do nothing to suggest that the discussions involved disclosure of any confidential information. They were all completed while Hoffman was retained to complete the Report for the arbitration proceeding – a Report which was created for the sole purpose of proving that J.D. Steel's work was done properly.

This Court recognizes the "potential threat that confidences may be disclosed"[53] when a company's attorney communicates with an expert, but again, J.D. Steel's involvement in some of those communications destroys Boman's claim to confidentiality. It is difficult to imagine any series of exchanges between three willingly cooperating parties all working toward a common goal that could be argued to have deliberately excluded one of the parties in order for the other two to have a "confidential relationship," particularly when their objective was (then) the same. Indeed, "common sense" does *not*, in this case, "suggest[] that a large portion of information communicated to an expert . . . would be privileged."[54] Indeed, the focus of Boman and Hoffman's relationship was on J.D. Steel's work, in a setting entirely consistent with Hoffman's current position favoring J.D. Steel.

Because it was not reasonable for Boman to conclude that a confidential relationship existed with Hoffman, and because confidential or privileged information was most likely not disclosed to Hoffman, this Court finds that J.D. Steel's designation of Hoffman as its expert witness is appropriate.

---

[52] Rasmussen Affidavit, ¶ 6.
[53] *Marvin*, 113 F.R.D. at 590.
[54] *Valassis v. Samuelson*, 143 F.R.D. 118, 124 (E.D. Mich. 1992).

### J.D. Steel's designation of David Ough

Boman's objection to J.D. Steel's designation of David Ough is based on the contention that Boman would be prejudiced by the late submission of Ough's expert report.[55] This contention is without merit because J.D. Steel eliminated this concern when it informed Boman that it would agree and stipulate to an extension of time for Boman to file a rebuttal expert report.[56] J.D. Steel's behavior has been reasonable, and J.D. Steel's designation of David Ough permissible.

However, the trial court may determine not to permit cumulative expert testimony at trial. That decision is not before the magistrate judge.

### CONCLUSION

J.D. Steel's designation of Michael Hoffman as an expert is permissible. Hoffman has not switched sides; Boman cannot reasonably conclude that a confidential relationship existed with Hoffman; and confidential or privileged information was not likely shared with Hoffman because J.D. Steel personnel were also involved in preparing the Report. J.D. Steel's designation of David Ough as an expert is also permissible. J.D. Steel's willingness to stipulate to an extension of time for Boman to file a rebuttal expert report eliminates any prejudice Ough's late report may cause Boman.

Accordingly,

---

[55] Memo to Strike, 10.
[56] Memo in Opposition, 8.

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike Defendant's Rule 26 Expert Disclosure[57] is DENIED.

DATED this _____ day of February, 2008.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[57] Plaintiffs' Motion to Strike Defendant's Rule 26 Expert Disclosure (Motion to Strike), docket no. 60, filed November 28, 2007.